# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

MICHAEL W. BRANNIES, )
)
    Plaintiff )
)
v. )
) Case No. CV414-155
INTERNET ROI, INC., D/B/A )
AMERICAN OVERLOOK, )
)
    Defendant. )

## ORDER

In this defamation case plaintiff Michael W. Brannies contends that defendant Internet ROI, Inc. (ROI) published an image falsely implying that he had sexually assaulted a minor. Doc. 1-1, ¶¶ 5-11; doc. 7 at 1.[1] The image could be seen by Georgia residents on the internet, doc. 1-1 ¶ 8, though ROI says it was generated and internet-published in Massachusetts. Doc. 26 at 6. Having removed the matter from state court under diversity jurisdiction, doc. 1 at 2, ROI, an out-of-state

---

[1] "On or about January 13, 2014, the Defendant on its webpage http://americanoverlook.com published a picture of the Plaintiff above a heading which claimed 'VIDEO: Homeless Man Does the Unthinkable to 10-Year-Old Girl in Public.' The obvious inference is that the Plaintiff had committed an unthinkable act against a 10 year old girl in public." Doc. 1-1 at 7. Brannies also raises an intentional infliction of emotional distress claim. *Id.* at 8-9.

resident, moves to dismiss for lack of personal jurisdiction and insufficient service. Doc. 7. That motion is before the district judge.

Before the undersigned is plaintiff's motion to compel ROI to respond to a jurisdictional discovery request. Doc. 25; *see also* doc. 19 (court order authorizing only "personal jurisdiction discovery"). To establish personal jurisdiction over ROI based on its Georgia contacts, doc. 25 at 4, Brannies wants data on ROI's website pricing for third-party advertisers. *Id.* at 9-10; doc. 29 at 3. He says he has shown between 49,000 and 150,000 monthly ROI website visitors from Georgia. Doc. 25 at 5 n. 6. And ROI has already admitted that it derives its revenue from the sale of advertising on its site. *Id.* at 7.

ROI's website, plaintiff further maintains, "interacts with each user, collecting information regarding all of the viewers, and translating that information into income." *Id.* at 6. ROI's Georgia-based income, Brannies insists, is relevant to the showing he must make under the personal jurisdiction standards set forth below. He reminds that ROI deliberately sends news and information onto the internet that it knows will be viewed by Georgians, and those viewers fuel at least part of ROI's ad revenue. *Id.* at 7-8. Ad revenue reflects viewer visit to ROI's site. *Id.*

at 8. So pricing is relevant to establishing contacts with Georgia. *Id.* ROI disagrees. Doc. 29.

## I. GOVERNING STANDARDS

### A. Motions To Compel

The discovery rules "require the disclosure of all relevant information so that ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts. . . ." *Gonzalez v. ETourandTravel, Inc.*, 2014 WL 1250034 at * 2 (M.D. Fla. Mar. 26, 2014) (quotes and cite omitted). Hence, "[t]he scope of discovery under [Fed. R. Civ. P. 26(b)(1)] is broad and includes 'discovery regarding any matter, not privileged, which is relevant to the claims or defense of any party involved in the pending action.' *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S. Ct. 385, 91 L. Ed. 451 (1947)." *Id.* Those resisting discovery must "show specifically how the objected-to request is unreasonable or otherwise unduly burdensome." *Id.*

Claims and defenses determine discovery's scope. *Chudasama v. Mazda Mortor Corp.*, 123 F.3d 1353, 1368 (11th Cir. 1997). "'Evidence is relevant if it has any tendency to make the existence of any fact or consequence more or less probable than it would be without the

3

evidence.' *United States v. Capers*, 708 F.3d 1286, 1308 (11th Cir. 2013)." *Gonzalez*, 2014 WL 1250034 at * 2. Here, the principles by which personal jurisdiction is established inform the relevancy determination of ROI's pricing data.

### B. Personal Jurisdiction

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *Sterling Currency Group LLC v. Maurer*, 2013 WL 4011063 at * 3 (N.D. Ga. Aug. 5, 2013). Where Georgia's long-arm statute is invoked for that purpose, the Court must first determine whether the exercise of jurisdiction under it violates the Due Process Clause. *Henriquez v. El Pais Q'Hubocali.com*, 500 F. App'x 824, 827-28 (11th Cir. 2012). Finally, "'a district court may properly refuse or limit jurisdictional discovery if the plaintiff has not made a sufficient showing that there may be a basis for exercise of jurisdiction, or if the proposed discovery seems unlikely to shed light on the jurisdictional question.' *Cold Smoke Capital, LLC v. Gross*, No. 1:11–CV–3558–WSD, 2012 WL 3612626, at *8 (N.D.Ga. Aug.

21, 2012) (quoting CHARLES ALAN WRIGHT ET AL., 8 FEDERAL PRACTICE AND PROCEDURE § 2008.3 (2010))." *Maurer*, 2013 WL 4011063 at *9.

Brannies relies on Georgia's long-arm statute to support personal jurisdiction over ROI. He specifically invokes O.C.G.A. § 9-10-91(1) & (3). Doc. 25 at 4. In pertinent part that statute provides:

> A court . . . may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts . . . enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she: (1) Transacts any business within this state; (2) Commits a tortious act or omission within this state . . .; (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

O.C.G.A. § 9-10-91.[2]

When § 9-10-91(1) is invoked, the Court must "examine all of a nonresident's tangible and intangible conduct and ask whether it can

---

[2] When the tortious conduct occurs over an Internet website, "the situs of this tort is considered to be where the website, or servers which maintain the website, are located." *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F.Supp.2d 228, 241 (S.D.N.Y. 2010); *Jordan Outdoor Enterprises, Ltd. v. That 70's Store, LLC*, 819 F.Supp.2d 1338, 1345 (M.D. Ga. 2011) ("Even if infringement occurred in Georgia as a result of Georgia residents viewing the infringing marks on Defendants' websites ... the conduct giving rise to the infringement occurred in Arkansas, where Defendants created the websites."); *Emory Group LLC v. ID Solutions, LLC*, 2014 WL 1415021 at * 3-4 (N.D. Ga. Apr. 10, 2014). Evidently ROI's servers are not located in Georgia, which would explain why Brannies has not relied upon § 9-10-91(2).

5

fairly be said that the nonresident has transacted any business within Georgia." *Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.*, 593 F.3d 1249, 1264 (11th Cir. 2010). Also,

> Subsection (1) applies to *business* transactions "conducted through ... Internet contacts." *ATCO Sign & Lighting Co., LLC v. Stamm Mfg., Inc.*, 298 Ga.App. 528, 534, 680 S.E.2d 571 (2009); *see also [Innovative Clinical & Consulting Servs., LLC v. First Nat. Bank of Ames*, 279 Ga. 672, 675 (2005)]* ("[N]othing in subsection (1) requires the physical presence of the nonresident in Georgia or minimizes the import of a nonresident's intangible contacts with the State."). The defendant must have "purposefully done some act or consummated some transaction in this state." *Aero Toy Store, LLC v. Grieves*, 279 Ga.App. 515, 517, 631 S.E.2d 734 (2006).

*Emory Group LLC*, 2014 WL 1415021 at * 2 (emphasis added). However, "it is not enough to show that the [d]efendant transacted business in Georgia. The [p]laintiff must also show that its cause of action arises out of those transactions. *See ATCO Sign & Lighting Co.*, 298 Ga. App. at 529, 680 S.E.2d 571 ('Jurisdiction exists if . . . the cause of action arises from or is connected with the act or transaction.')." *Id.* at * 3.

In *Emory Group LLC*, where the plaintiff ("A") sued the defendant ("B," a non-state defendant) for selling trademark-infringing clothing, A failed to establish personal jurisdiction because, even though two customers bought B's merchandise in Georgia, A failed to show that they

6

purchased any of the infringing garments. A thus failed on the § 9-10-91(1) ("Transacts any business within this state") jurisdictional peg. Nor did A satisfy § 9-10-91(2) & (3). *Id.*, 2014 WL 1415021 at * 3-4.

## II. ANALYSIS

ROI wasn't selling anything here. It merely published news content viewable online by Georgians, and there is no allegation that its servers, much less its publication's origin, were in Georgia. In *Henriquez,* a Georgia resident failed to establish that his defamation action arose from or was connected with some act or transaction consummated in Georgia for purposes of § 9-10-91(1). He never showed that the defamation arose out of, or was connected to, any business transaction in Georgia. The defendants' only alleged Georgia contacts consisted of displaying ads for various companies on their Internet Web sites, including advertisements for a company based in Georgia. Yet, there was no showing that they secured those ads directly through Georgia companies, or through any contact with any company in Georgia. And the mere fact that a particular website displays an ad that can be viewed in Georgia, or shows a company that does business in Georgia does not, by itself, equate to contact with Georgia. *Henriquez,*

500 F. App'x at 829 (citing *Smith v. Air Ambulance Network*, 207 Ga. App. 75, 75 (1993) (the "mere placement of advertisements in Georgia" was insufficient to show that a defendant purposefully transacted business in the state, such as to establish personal jurisdiction").[3]

---

[3] The following cases found sufficient contacts to support personal jurisdiction: *Aero*, 279 Ga. App. At 523-24 ("[T]he defendant operated an interactive Web site through which it has reached out to, and done business with, persons in Georgia. This case . . . involves the sale of an automobile with the transaction worth thousands of dollars and involving shipment of an automobile to be operated in Georgia . . . . [T]he car was shipped into Georgia by the nonresident seller and not by a carrier acting as the resident buyer's agent. Although [defendant] does not have officers, employees, offices, or business affiliates in Georgia, and although the revenue it derives from goods sold here may not be substantial in relation to its overall revenue, it does regularly solicit business in Georgia through the Internet, and the revenue it has derived from shipping cars to [plaintiff] and other persons in Georgia is substantial enough to establish sufficient minimum contacts with the state of Georgia in a case involving the exercise of specific jurisdiction. . . . [T]he state court did not err in determining that [defendant] has established sufficient minimum contacts with this state to warrant exercise of personal jurisdiction over it in this case."); *Peridyne Technology Solutions, LLC v. Matheson Fast Freight, Inc.*, 117 F. Supp. 2d 1366, 1372 (N.D. Ga. 2000) (Georgia plaintiff contracted with California defendants to provide computer consulting services and materials. After defendants terminated the contract, on one or more occasion defendant illegally hacked into several of the plaintiff's servers and directories in Georgia in order to download and delete files. The defendants never entered Georgia, but "allegedly manipulated their way into private files stored on the plaintiff's computers, servers, and databases based in Georgia. Thus, they deliberately directed their activities at Georgia and purposefully directed their activities at its residents, so "the instant litigation results from and/or is sufficiently related to those activities for this court to have personal jurisdiction over them."), *abrogated on other grounds by Diamond Crystal*, 593 F.3d at 1249.

Compare those cases with *Barton Southern Co., Inc. v. Manhole Barrier Systems, Inc.*, 318 F. Supp. 2d 1174, 1177 (N.D. Ga. 2004) ("Although the Web site allows customers to fill out an electronic order form, it does not allow customers to make payments or complete orders. Additionally, the [defendant's] Web site has never received any e-mail from anyone in Georgia, nor has [defendant] sent any e-mail via its Web site to anyone in Georgia. There is nothing on the Web site showing an intent to reach out to persons living in Georgia, and there is no evidence that any Georgia

*Henriquez* and *Barton Southern Co.* effectively exemplify the "*Zippo* sliding scale" (*see supra* n. 2) that the district judge likely will apply in ruling that no personal jurisdiction exists over ROI. At most plaintiff alleges (and discovery thus far has shown) a no-jurisdiction position (passive web site where information is posted and users can only

---

residents have done business with [defendant], either through the Internet or otherwise. Under these circumstances, the Court concludes that the [defendant's] Web site fails to furnish a Georgia contact adequate to support personal jurisdiction. . ."); *Gorman v. Jacobs*, 597 F. Supp. 2d 541, 545-51 (E.D. Pa. 2009) (because one can access web sites from anywhere, a defendant's Internet activity, be it website operation or use, must evince an intent to interact with the forum to justify the exercise of personal jurisdiction; hence, comments on website were insufficient contacts with forum state to support exercise of personal jurisdiction over defendants); *Zippo Mfg. Co. v. Zippo Dot Com., Inc.*, 952 F. Supp. 1119, 1123-25 (W.D. Pa. 1997) (courts deploy a sliding scale for the exercise of personal jurisdiction based on how the particular website works; at one end, where jurisdiction is proper, are commercial interactive web sites that "involve the knowing and repeated transmission of computer files over the Internet," and through which individuals actively engage in business with residents of a foreign jurisdiction; at the other end are passive web sites where information is posted and users can only view it).

One other, *non*-Georgia case, is useful here: *Blumenthal v. Drudge*, 992 F. Supp. 44 (D.C. 1998). There the defendant was the author of "The Drudge Report" gossip web site that published matters online from and distributed same through electronic mail subscriptions. It also appeared on America Online, an Internet service provider that provided its own content. According to the plaintiff White House employees, Drudge's August 10, 1997 report (originating from California) defamed them, so they sued both Drudge and AOL. Drudge moved to dismiss for lack of personal jurisdiction. Held, personal jurisdiction over Drudge was proper because he had persistent contacts with the District of Columbia. His internet ties with the forum, including the distribution of his column via electronic mail to DC residents and his solicitation of contributions from them, were persistent contacts. The court also considered his non–internet connections, including his reliance on district residents as sources for his column, plus his travel to and from DC for interviews. All of those" contacts warranted the exercise of personal jurisdiction over him, and that did not offend due process concerns. *Id.* at 53-57.

view it) on the *Zippo* scale. That, in turn, justifies (on futility grounds) the denial of his motion to compel.

## III. CONCLUSION

Accordingly, plaintiff's Motion to Compel (doc. 25) is **DENIED**.

**SO ORDERED** this 4Th day of December, 2014.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA