# IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

MICHAEL W. BRANNIES,                )
                                    )
    Plaintiff,               )
                                    )
v.                                  )    CASE NO. CV414-155
                                    )
INTERNET ROI, INC., d/b/a           )
American Overlook,                  )
                                    )
    Defendant.               )
                                    )

## O R D E R

Before the Court is Defendant Internet ROI, Inc.'s Motion to Dismiss. (Doc. 7.) For the following reasons, Defendant's motion is **GRANTED** and Plaintiff's complaint is **DISMISSED**. Plaintiff's Motion to Amend Complaint is **DENIED**.[1] The Clerk of Court is **DIRECTED** to close this case.

## BACKGROUND

In this case, Defendant owns and operates an online news-based website. According to Plaintiff's complaint, Defendant's website included a photograph of Plaintiff above the headline "VIDEO: Homeless Man Does the Unthinkable to 10-Year-Old Girl in Public." (Doc. 1, Compl. ¶ 5.) A link under the photograph

---

[1] The Court reviewed the proposed amendment to Plaintiff's complaint. (Doc. 30, Ex. B.) The proposed factual allegations are nothing more than legal conclusions and would still fail to establish personal jurisdiction. See Brandt v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing Forman v. Davis, 371 U.S. 178, 182 (1962)) (permitting court to disallow amendment of complaint where amendment would be futile).

showed a grainy video of an "unkempt and confused looking individual entering a restaurant." (Id. ¶ 6.) The video describes a sexual assault the individual in the video allegedly committed against a ten-year-old girl. (Id.) While Plaintiff's photograph appeared above the headline, he was not the individual depicted in the video. (Id.)

According to Plaintiff, the photo and associated headline inferred that Plaintiff was the individual who committed the sexual assault. (Id.) Based on Defendant's use of the photo, Plaintiff filed a complaint in the State Court of Chatham County alleging libel per se and negligent infliction of emotional distress. (Id. ¶¶ 4-14.) Defendant timely removed the case to this Court. (Doc. 1.)

In its Motion to Dismiss, Defendant argues that it is not subject to personal jurisdiction in this Court because it has never transacted any business in and has no contacts with the state of Georgia. (Doc. 7 at 3-7.) In this regard, Defendant reasons that its news-based website, which includes advertisements, is not sufficient under Georgia law to subject it to personal jurisdiction in this state. (Id. at 3-6.) In response, Plaintiff argues this Court has personal jurisdiction because Defendant transacts and solicits business

in Georgia given that some Georgia residents either access the website or follow its advertising links.[2] (Doc. 13 at 5-7.)

**ANALYSIS**

I.   STANDARD OF REVIEW

In response to a motion to dismiss for lack of personal jurisdiction when no evidentiary hearing is held, the plaintiff has the burden of proving a prima facie case of jurisdiction with respect to the contesting defendant. Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 255 (11th Cir. 1996) (quoting Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990)). To meet this standard, the plaintiff must present sufficient evidence concerning jurisdiction to survive a motion for directed verdict. Id. The complaint's allegations that are uncontroverted by affidavit are accepted as true, but when the evidence conflicts, all reasonable inferences are construed in favor of the plaintiff. Id.

II.   BASIS OF JURISDICTIONAL POWER AND DUE PROCESS LIMITATIONS

Two separate concepts restrict this Court's exercise of personal jurisdiction in diversity cases. The first limitation is that district courts can only assert personal jurisdiction

---

[2] Defendant generates revenue from advertisers based on the number of visitors to the site and the number of individuals that follow an advertising link. (Doc. 13 at 5.)

over nonresident defendants if doing so would be consistent with the long-arm statute of the state in which the court sits. <u>Nippon Credit Bank, Ltd. v. Matthews</u>, 291 F.3d 738, 746 (11th Cir. 2002). Accordingly, this Court has personal jurisdiction over a nonresident defendant only if the Georgia long-arm statute, O.C.G.A § 9-10-91, so provides.

The second limitation is that the exercise of personal jurisdiction under Georgia's long-arm statute must comport with the requirements of constitutional due process. <u>Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.</u>, 593 F.3d 1249 (11th Cir. 2010). If minimum contacts are sufficiently established, other factors are examined to determine the ultimate fairness of asserting personal jurisdiction, such as "the burden on the defendant; the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 292, (1980) (citations and quotations omitted).

The Georgia Court of Appeals has made clear that the exercise of general jurisdiction under the Georgia long-arm statute requires a "continuous and systematic business contact" with the State of Georgia. <u>Mitsubishi Motors Corp. v. Colemon</u>, 290 Ga. App. 86, 89, 658 S.E.2d 843, 847 (2008). <u>Colemon</u> stated the importance of additional factors over and above the mere minimum contacts required to constitutionally exercise personal jurisdiction, noting that

> [w]hen the suit does not arise out of the defendant's contacts with the forum, the state is said to exercise general jurisdiction, and factors relevant to the existence of such jurisdiction include regularly doing business in the state, deriving substantial revenue from goods or services in the state, having agents or employees in the state, maintaining an office in the state, and having subsidiaries or business affiliates in the state.

<u>Id.</u> In this case, the complaint makes no allegations that would allow this Court to find that Defendant is subject to general jurisdiction in the State of Georgia.

Because Defendant is not subject to general jurisdiction, this Court must now determine whether any aspect of the Georgia long-arm statute will permit the exercise of specific personal jurisdiction in this case. The Georgia long-arm statute provides for specific personal jurisdiction "as to a cause of action arising from any of the acts [or] omissions,

. . . enumerated" in the statute. O.C.G.A. § 9-10-91. Georgia courts applying this language have required that "the cause of action arise[] from or [be] connected with the act or transaction" that forms the basis for haling the defendant into a Georgia court. ATCO Sign & Lighting Co. v. Stamm Mfg., 298 Ga. App. 528, 529, 680 S.E.2d 571, 573 (2009); accord Gateway Atlanta Apartments v. Harris, 290 Ga. App. 772, 779, 660 S.E.2d 750, 757 (2008). The statute operates with subsections that specify the types of activities that subject nonresidents to personal jurisdiction in Georgia's courts. "The exercise of personal jurisdiction in Georgia requires a court to find that at least one prong of the long-arm statute is satisfied." Diamond Crystal, 593 F.3d at 1259. Although Georgia's statute contains six subsections providing for jurisdiction, Plaintiff argues only that O.C.G.A. § 9-10-91(1) and (3) provide this Court with personal jurisdiction over Defendant. (Doc. 13 at 5-9.)

Subsection one of the Georgia long-arm statute grants personal jurisdiction over a nonresident if he or she "transacts any business within this state," O.C.G.A. § 9-10-91(1), while subsection three provides for personal jurisdiction where a nonresident "[c]ommits a tortious injury

in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state," id. § 9-10-91(3). A nonresident "transacts any business" in Georgia if

> (1) the nonresident defendant has purposefully done some act or consummated some transaction in [Georgia],
> (2) if the cause of action arises from or is connected with such act or transaction, and
> (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.

Aero Toy Store, LLC v. Grieves, 279 Ga. App. 515, 517-18, 631 S.E.2d 734, 737 (2006). In this case, Plaintiff cannot establish that his claim arose from or was connected to some act or consummated transaction that occurred in Georgia. The alleged misconduct arose out of Defendant's placement of the photo on its news-based website, not the advertisements included on that website. See Henriquez v. El Pais Q'Hubocali.com, 500 Fed. App'x 824, 828 (11th Cir. 2012) ("Henriquez's defamation claims arose out of the defendants' publication of defamatory news articles on their websites, not the defendants' placement of advertisements from U.S. companies on their websites. Thus, the district court could not exercise

personal jurisdiction under subsection (1) of Georgia's long-arm statute . . . ."). Even prior to the advent of the internet, Georgia courts recognized that circulation of advertisements in Georgia was insufficient to confer personal jurisdiction under subsection one of Georgia's long-arm statute, even where the advertiser later negotiated and contracted with a Georgia resident. See Flint v. Gust, 180 Ga. App. 904, 905-06, 351 S.E.2d 95, 96 (1986) ("It is well settled that an out-of-state defendant will not be deemed to have engaged in purposeful business activity in this state merely because he has advertised products for sale in national trade magazines circulating in this state and has accepted orders for such products which have been transmitted to him from this state by mail, telephone, or other instrumentality of interstate commerce in response to such advertisements."); Phears v. Doyne, 220 Ga. App. 550, 551, 470 S.E.2d 236, 237 (1996). Certainly if advertising and actually selling products to Georgia residents does not confer personal jurisdiction, the mere inclusion of third-party advertising directed toward Georgia residents on a news-based website is woefully insufficient to subject the website's content provider to personal jurisdiction in Georgia.

Similarly, O.C.G.A. § 9-10-91(3) fails to confer this Court personal jurisdiction over Defendant. Subsection three of the long-arm statute requires Plaintiff to show that Defendant " 'regularly' conducted or solicited business in Georgia, or derived 'substantial revenue from goods used or consumed or services rendered' in Georgia." Henriquez, 500 Fed. App'x at 828-29 (quoting O.C.G.A. § 9-10-91(3)). A website owner placing advertisements on its website that are viewable in Georgia, or even advertise Georgia businesses, still lacks sufficient contacts with Georgia to establish personal jurisdiction under subsection three. Id. at 829. In this case, Plaintiff has failed to establish that Defendant "actually conducted or solicited business in Georgia, much less on a regular basis, or that [Defendant] derived substantial revenue from goods used or services rendered in Georgia." Id. Because Plaintiff has not proved even a prima facie case of personal jurisdiction, Defendant's Motion to Dismiss must be **GRANTED**.

In his response, Plaintiff relies on Aero Toy Store for the notion that deriving revenue from Georgia residents based on website advertisements is sufficient to confer personal jurisdiction. (Doc. 13 at 8-9.) In Aero Toy Store, the defendant operated an interactive website designed to sell

9

automobiles that it personally shipped. 279 Ga. App. at 523, 631 S.E.2d at 740. Based on the interactive nature of the website, the substantial revenue generated, and the defendant's shipping of the vehicle to Georgia, the court in Aero Toy Store concluded that the defendant had "sufficient minimum contacts with this state to warrant exercise of personal jurisdiction over it in this case." Id. at 523-24, 631 S.E.2d at 741.

However, the defendant's activities in Aero Toy Store are grossly dissimilar from Defendant's conduct in this case. Here, Defendant simply operates a news-based website that includes third-party advertising. Defendant neither transacts any direct business in Georgia nor sells any products to Georgia residents. Even assuming that some of Defendant's revenue is based on Georgia residents following advertising links and that the website includes advertisements for Georgia businesses, Defendant still does not have sufficient minimum contacts with Georgia to subject it to personal jurisdiction. See Henriquez, 500 Fed. App'x at 828-29.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. 7) is **GRANTED** and Plaintiff's complaint is **DISMISSED**.

Plaintiff's Motion to Amend Complaint is **DENIED**. The Clerk of Court is **DIRECTED** to close this case.

SO ORDERED this _13ᵗʰ_ day of March 2015.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA